# UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Anthony Ferrier<br><br>v.<br><br>DTE Energy Electric Services Company | Case No. _____<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

**NOW COMES** Plaintiff, ANTHONY FERRIER ("Plaintiff"), by and through his undersigned Counsel, and states as follows: This is an action under Title VII of the Civil Rights Act of 1964 to address unlawful religious discrimination by DTE Energy Corporate Services, LLC ("DTE," "Defendant"). Specifically, Plaintiff Mr. Anthony Ferrier, Public Improvement Coordinator for DTE for multiple years now, was forced to shave his facial hair contrary to his religious convictions. Despite being willing to comply with specific DTE Facial Hair Policy, DTE disparately and selectively imposed a different Facial Hair Policy on Plaintiff under the threat of disciplinary actions and termination for failure to comply. In support thereof, Plaintiff alleges, and states the following.

1

## ADDRESSES OF THE PARTIES

1. Plaintiff Anthony Ferrier, a resident of Muskegon, Michigan, may be contacted through his counsel, whose addresses are noted in this Complaint, so that his privacy is maintained.

2. Defendant DTE is headquartered at 1 Energy Plaza, Detroit, Michigan, 48226.

3. Plaintiff works at Defendant DTE's location in Muskegon, Michigan, at 2359 Olthoff St., Muskegon, MI 49444.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337 and 1343.

5. This action is authorized pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e to 2000e-17.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f).

7. All employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Michigan.

## PARTIES

8. Plaintiff Anthony Ferrier is an individual and citizen of Michigan.

9. Defendant DTE Energy Electric Services Company is organized under the laws of Michigan with its headquarters at 1 Energy Plaza, Detroit, Michigan, 48226.

10. Plaintiff works at Defendant DTE's location in Muskegon, Michigan, at 2359 Olthoff St., Muskegon, MI 49444.

## ADMINISTRATIVE PROCESS

11. On or about March 3, 2023, Plaintiff filed a Complaint with the Equal Employment Opportunity Commission ("EEOC") complaining of discriminatory acts alleged herein.

12. On or about September 12, 2024, the EEOC issued the Plaintiff a Notice of Right to Sue. Attached hereto as Exhibit 1 is a true and correct copy of the notice.

13. Plaintiff has met all administrative prerequisites necessary for filing this action.

## FACTUAL ALLEGATIONS

14. Plaintiff began his employment at DTE on or about December 8, 2008, and continues to work there today.

15. Plaintiff began his employment with DTE as a Meter Reader.

16. Plaintiff is now a Public Improvement Coordinator and has held this position since or about March 1, 2021.

17. Plaintiff is a Christian who believes that Jesus is the Son of God, and that He was crucified for our sins, died, and rose again, and that those who believe in Him and call upon Him for salvation will be saved.

18. Plaintiff believes that the Holy Bible (scripture) is the word of God, and that it instructs him in how he should live his daily life.

19. Plaintiff holds a deep and sincere personal religious belief that scripture instructs men to not shave their facial hair. Thus, he believes he cannot shave his facial hair.

20. DTE has a facial hair growth limitation policy pertaining to wearing respirators when in an oxygen-deficient atmosphere or in the presence of hazardous cases.

21. This policy reads, in relevant part, that "Enforcement of the facial hair growth limitation is to be accomplished by approaching and *advising* the employee that <u>facial hair may</u>

3

**be interfering with effective respirator operation**. The employee who fails to remove the facial hair ***immediately prior to wearing the respirator*** . . . will be subjected to the procedures established for violation of rules and policies by Human Relations." (Emphasis added). Attached hereto as Exhibit 2 is a true and correct copy of the policy.

22. This policy also states: "When an employee is not capable of complying with this policy due to **medical considerations** *or* **religious beliefs** . . . , management may, in its discretion, assign the employee to other available work." *See* Exhibit 2 (emphasis added).

23. While Plaintiff initially worked in the field for DTE, a position that had higher potential for him to be put in a position that would require donning a respirator, his current position is as a Public Improvement Coordinator "Field Leader."

24. While Plaintiff carries the qualifications for work in the field, he has neither been on a truck nor worked in the field for several years. Plaintiff's work has strictly been within the office.

25. Plaintiff's current role requires him to work directly with Municipal leadership in a planning and management capacity to discuss rerouting DTE gas facilities.

26. Plaintiff's day-to-day work in this position consists of meetings and/or phone calls, with most of the work done in the office or remotely on a computer.

27. Plaintiff creates spreadsheets and designs mapping and orders that are sent to contractors to install.

28. Plaintiff applies for permits that allow DTE to work in municipalities.

29. None of the work that Plaintiff does in his current role puts him at risk of being in an oxygen-deficient atmosphere or in the presence of hazardous cases.

30. Plaintiff's religious convictions on not shaving his facial hair began in the Fall of 2021 after he did an in-depth Hebrew study of the Bible, including portions of the Old Testament that reference negative connotations with the shaving of beards/facial hair.

31. Informing his convictions were Bible verses in Second Samuel that tell of King David's men being captured and their beards shaven to humiliate and emasculate them.

32. Similarly, the prophet Isaiah, in Isaiah 7:20, indicates that the "razor" is a form of punishment for walking away from God.

33. Scripture also references Jesus, Plaintiff's Lord and Savior, in a prophesy that Jesus's beard would be plucked from His face as a form of humiliation—a prophesy that was fulfilled during the crucifixion.

34. Plaintiff was convicted by the Holy Spirit through these and other scriptures that he was designed by God and that he should grow out his beard to honor God to use it as an opportunity to witness to and share his faith with others.

35. The only position Plaintiff has held at DTE since the Fall of 2021 and the beginning of his religious convictions has been the in-office position of Field Leader and Public Improvement Coordinator.

36. At no time has Plaintiff refused to shave immediately prior to donning a respirator.

37. Plaintiff has not been in position at work where he has been required to don a respirator in over a decade.

38. As stated above, Plaintiff's current work role as a Public Improvement Coordinator does not place him in a position where he is at risk of exposure and in need of wearing a respirator.

39. In the fall of 2022, roughly ten months after Plaintiff began growing out his beard in accordance with his religious convictions, DTE ordered Plaintiff to report to work clean-shaven.

5

40. Plaintiff struggled with this order as it conflicted with his sincerely-held religious beliefs but ultimately complied with the order.

41. Upon reporting to work clean-shaven, co-workers made comments toward Plaintiff mocking his reporting to work clean-shaven despite Plaintiff's sincerely held religious beliefs about wearing a beard.

42. Reports of these comments were made to Human Resources.

43. In response, Human Resources reached out to Plaintiff, notifying him of his ability to request a religious accommodation to adhere to his religious convictions about growing out his beard.

44. Upon the recommendation of Human Resources, Plaintiff requested a religious accommodation on September 28, 2022.

45. DTE ultimately denied Plaintiff's accommodation request.

46. Plaintiff then timely filed his EEOC complaint against Defendant.

47. During the pendency of the EEOC investigation, Plaintiff received several demands to shave his beard before coming to work despite never being required to don a respirator.

48. Moreover, DTE discriminatorily applies its own policy to Plaintiff because other employees at DTE holding same or similar positions to Plaintiff were not required to shave their facial hair.

49. In the 16 years that Plaintiff has been employed with DTE, emergency backup crews have not been used.

50. Defendant attempted to create a backup crew schedule in the Spring of 2024, but the Union objected to this practice, which had not been run by the Union or used in the past. Yet, in the summer of 2024, DTE scheduled Plaintiff to serve as "emergency backup crew."

51. Despite Plaintiff's position at DTE and his seniority, Plaintiff was scheduled multiple times to serve as emergency backup crew while other employees were not included in the rotation at all.

52. Plaintiff was scheduled for "emergency backup crew" for the weeks of June 3-7, July 1-5, and August 19-23, 2024.

53. While serving as emergency backup crew during those weeks, Plaintiff was not called into the field nor required to don a respirator.

54. Despite no circumstance arising under which Plaintiff was required to don a respirator, Plaintiff was called into a meeting with management on June 19, 2024, at 3:30 PM and "instructed by the company to report to work clean shaven on his next scheduled shift. Failure to do so could lead to disciplinary action." Attached hereto as Exhibit 3 is a true and correct copy an email Plaintiff received documenting this meeting.

55. According to the subject line of the email, Plaintiff was accused of a "**Violation of Safety Policy**." (Emphasis added). *See* Exhibit 3.

56. Plaintiff has never been provided a company policy—safety policy or otherwise—that requires him to be clean-shaven prior to reporting to work.

57. Plaintiff struggled with choosing between his religious beliefs and potential disciplinary action and took a few days of personal and vacation time to pray about his next steps.

58. Ultimately, Plaintiff determined not to shave his beard and to adhere to his sincere religious convictions.

59. No action was taken against Plaintiff until September 11, 2024, when Plaintiff was again called into a meeting with management. Attached hereto as Exhibit 4 is a true and correct copy of a letter Plaintiff received documenting this meeting.

60. During the September meeting, Plaintiff was disciplined for not shaving his beard after the June 19, 2024, meeting. *See* Exhibit 4.

61. Despite having no policy requiring employees to be clean-shaven before reporting to work, DTE told Plaintiff that he "continued to not meet the Company's requirement of being clean shaven when reporting to work." *See* Exhibit 4.

62. DTE further told Plaintiff that his "actions are unacceptable and not in line with the Gas Handling Facial Hair Policy." *See* Exhibit 4.

63. Plaintiff was "issued 2 (two) points per the DTE Energy Company Employment Standards" for reporting to work on June 19, 2024, without being clean-shaven. *See* Exhibit 4.

64. DTE informed Plaintiff that an "[a]ccumulation of ten (10) points shall subject employee to discharge," and that if he received "a total of 12 to 15 points," he would be discharged. *See* Exhibit 4.

65. To date, DTE has not provided Plaintiff with a written company policy that requires him or other employees to report to work clean-shaven.

66. The only policy ever provided to Plaintiff by Defendant (Exhibit 2) simply requires an employee to shave immediately prior to donning a respirator.

67. Since 2021, DTE has continually forced Plaintiff to face the daily challenge of choosing to adhere to his religious beliefs and convictions or losing his employment.

68. Plaintiff chose to shave his beard rather than face termination and loss of his ability to provide for his family; however, Plaintiff notified the EEOC of Defendant's discriminatory practices, after which he received his Right to Sue letter from the EEOC.

## CAUSE OF ACTION

### Violation of Title VII

69. The allegations in Paragraphs 14 through 68 above are incorporated by reference herein as if fully set out herein.

70. Pursuant to Title VII, "religion includes all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

71. Pursuant to Title VII and having sincerely held religious beliefs of which Defendant was fully aware, Plaintiff belongs to a protected class.

72. Defendant's decision to refuse Plaintiff's accommodation request and force him to shave or face disciplinary action, including termination of employment, was not based on objective, job-related criteria but upon his religious beliefs.

73. The effect of DTE's actions complained of in the paragraphs above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his religious beliefs.

74. The unlawful employment practices of DTE and complained of in the paragraphs above were intentional.

75. The unlawful employment practices of DTE were done with malice and/or reckless indifference to Plaintiff's protected rights and warrant the imposition of punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Anthony Ferrier respectfully requests that the Court enter judgment against Defendant, and provide Plaintiff with the following relief:

(a) A permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it from following its

own written policy and disparately failing to accommodate the sincerely held religious beliefs of its employees.

(b) A declaratory judgment that Defendant's actions violated Plaintiff's rights under Title VII.

(c) An order requiring Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees, regardless of religion and/or religious beliefs.

(d) Affirmative relief necessary to eradicate the effects of unlawful employment practices complained of herein.

(f) Compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of herein, including emotional pain and suffering, in an amount to be determined at trial.

(g) Punitive damages in an amount to be determined at trial.

(h) Reasonable attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 42 U.S.C. § 2000e-5(k).

(i) An Order granting Plaintiff all further relief to which Plaintiff may be entitled.

Further, Plaintiff demands a jury trial.

Dated: September 30, 2024.	Respectfully submitted,

**AMERICAN CENTER FOR LAW & JUSTICE**
Olivia F. Summers*
Elgine Heceta McArdle*
201 Maryland Ave NE
Washington, DC 20002
Telephone: (757) 955-8176
osummers@aclj.org
*Application for Admission forthcoming

**SIRI & GLIMSTAD**

By: */s/ Allison R. Lucas*
MI State Bar No. P73331
220 West Congress Street,
2nd Floor
Detroit, MI 48226
Telephone: (313) 251-9161
Facsimile: (646) 417-5967
alucas@sirillp.com

***Counsel for Plaintiff***